GEORGE E. BANKS, ASSIGNEE, V. OMAHA BARB
WIRE CO.

[FILED JULY 2, 1890.]

**Assignment for Creditors: PRIOR PREFERENCES.** If an insolvent debtor, within thirty days before the making of a general assignment for the benefit of his creditors, with a view to give a preference to a creditor, gives a real estate mortgage and collateral notes to secure an indebtedness created more than nine months before, and the creditor has at the time a reasonable cause to believe that the debtor is insolvent, *held*, that such security was given in fraud of the assignment laws of this state, and is void.

APPEAL from the district court for Hitchcock county. Heard below before COCHRAN, J.

*Thos. Colfer*, and *Bartlett, Baldrige, Ledwich & Crane*, for appellant.

*H. W. Cole*, and *W. S. Morlan*, contra.

Citations of counsel are, in the main, referred to in opinion.

NORVAL, J.

This action was brought by the plaintiff, George E. Banks, as assignee of Mrs. E. H. Richardson, an insolvent debtor, to set aside a real estate mortgage alleged to have been given by said Richardson to the defendant in preference to her other creditors, and in fraud of the insolvency laws of this state, and also to recover certain collateral notes alleged to have been delivered by Richardson to the defendant for the same purpose. A decree was entered in the district court in favor of the plaintiff, and the defendant appeals.

For more than a year prior to the 4th day of September, 1886, Mrs. E. H. Richardson was engaged in the hardware business in the town of Stratton, in Hitchcock county, and on that day she made a general assignment to the sheriff of said county, of all her property for the benefit of all of her creditors, which assignment was duly recorded on the day of its date.    The sheriff took immediate possession of the assigned property. The plaintiff, being elected as assignee of the assigned estate, accepted the trust, gave the required bond, and entered upon his duties as assignee. On the 1st day of October, 1885, Mrs. Richardson became indebted to the Omaha Barb Wire Co. in the sum of $905, for goods purchased of it at that time.    To secure this indebtedness, Mrs. Richardson, on the 25th day of August, 1886, executed and delivered to the defendant a mortgage on lot 7, block 9, in the town of Stratton, and also delivered to the defendant, as collateral security to said indebtedness, several promissory notes owned by her, and amounting to several hundred dollars. The collateral notes and the real estate were included in the deed of assignment.    The defendant has since collected on these collaterals $251.82.    At the time of the execution of the mortgage Mrs. Richardson was insolvent and contemplated making an assignment for the benefit of her creditors, in case she was pressed by them to make payment. The above facts are undisputed.

The plaintiff introduced testimony tending to show that the defendant, when it received the mortgage and collateral notes, had a reasonable cause to believe that Mrs. Richardson was insolvent and that it accepted the security in fraud of the law relating to assignments.    The plaintiff called as a witness C. W. Shurtleff, who testified that in 1886 he was engaged in the banking business at Stratton ; that prior to the execution of the mortgage the defendant sent to the witness for collection its claim against Mrs. Richardson, and being unable to collect the same, it was returned

to the defendant; that shortly before the mortgage was given, Mr. Sherlock, as agent of the defendant, called upon Mr. Shurtleff at his place of business in Stratton and inquired as to Mrs. Richardson's circumstances, who was then informed that she was in close financial circumstances; that the bank had a good many accounts against her which she was unable to pay, and that there was no immediate prospect of her paying the defendant's claim.

Mrs. Richardson testified that she gave the notes and mortgage because the agent and attorney of the defendant said they would make trouble by closing up the business at once if she did not secure the claim, but if she would give the security, the mortgage should not be placed upon record, and that they promised to keep the matter quiet so as to prevent any one else from making her trouble. This witness further testified that she owed on August 25, 1886, between $4,000 and $5,000, and knew she was then insolvent and unable to pay her debts; that she stated the condition of her affairs to Sherlock and Cordeal, who represented the defendant.

George H. Sherlock and Joseph A. Cordeal each in their testimony expressly deny having any conversation with Mrs. Richardson; that they had conversation only with her husband out of her presence. Mr. Sherlock denies having the conversation testified to by Shurtleff. It is impossible to reconcile the testimony of the witnesses. If the testimony of Mrs. Richardson and Shurtleff is true, there can be no doubt that the agent of the defendant was aware of the insolvency of Mrs. Richardson when the security was taken. The district court found this point against the defendant, and we are not prepared to say that it was not justified in so finding.

It is claimed that under the repeated decisions of this court, a debtor in failing circumstances has a right to secure, by mortgage or otherwise, a part of his creditors to the exclusion of others, and that such preference will not in-

validate the security. The following cases are cited by the appellant to sustain that position: *Nelson v. Garey,* 15 Neb., 531; *Lininger v. Raymond,* 12 Id., 19; *Bierbower v. Polk,* 17 Id., 268; *Grimes v. Farrington,* 19 Id., 48; *Dietrich v. Hutchinson,* 20 Id., 52. While these cases recognize the general rule to be that an insolvent debtor may prefer one or more of his creditors, they do not decide the point herein involved. It is not disputed that a creditor, having no knowledge at the time of the insolvency of the debtor, may accept security for his debt. The question, however, presented by this record is this, Is a mortgage valid given by an insolvent debtor within thirty days prior to his making of a general assignment, with a view of giving a preference to the creditor, when the latter had reasonable ground to believe that his debtor was insolvent? The determination of this point involves the construction of the law relating to assignments.

Sections 42, 43, and 44 of chapter 6 of the Compiled Statutes are as follows:

"Sec. 42. If a person, being insolvent, or in contemplation of insolvency, within thirty days before the making of any assignment, makes a sale, assignment, transfer, or other conveyance of any description, of any part of his property to a person who then has reasonable cause to believe him to be insolvent, or in contemplation of insolvency, and that such sale, assignment, transfer, or other conveyance is made with a view to prevent the property from coming to his assignee in insolvency, or to prevent the same from being distributed under the laws relating to insolvency, or to defeat the object of, or in any way to impair, hinder, impede, or delay the operation and effect of, or to evade any of said provisions, the sale, assignment, transfer, or conveyance shall be void, and the assignee may recover the property, or the assets, of the insolvent. And if such sale, assignment, transfer, or conveyance is not made in the usual and ordinary course of business of the debtor,

that fact shall be *prima facie* evidence of such cause of belief.

"Sec. 43. If a person, being insolvent, or in contemplation of insolvency, within thirty days before the making of the assignment, with a view to give a preference to a creditor or person who has a claim against him, procures any part of his property to be attached, sequestered, or seized on execution, or makes any payment, pledge, assignment, transfer, or conveyance of any part of his property, either directly or indirectly, absolutely or conditionally, the person receiving such payment, pledge, assignment, transfer, or conveyance, or to be benefited thereby, having reasonable cause to believe such person is insolvent, or in contemplation of insolvency, and that such payment, pledge, assignment, or conveyance is made in fraud of the laws relating to insolvency, the same shall be void, and the assignee may recover the property, or the value of it, from the person so receiving it or so to be benefited.

"Sec. 44. Nothing in this act contained shall be construed so as to prevent any debtor from paying, or securing to be paid, any debt, not exceeding the sum of one hundred dollars, for clerks' or servants' wages, or from paying or securing any debt which shall have been created within nine months prior to the date of such payment, or securing or to affect any mortgage or security made in good faith to secure any debt or liability created simultaneously with such mortgage or security, provided any such mortgage shall be filed for record in the proper office within thirty days from its date."

The evident purpose of the legislature, in enacting these provisions, was to prevent an insolvent debtor from disposing of his property in favor of some of his creditors to the exclusion of others and to secure an equal and just distribution of his property among all his creditors. Many of the provisions of sections 42 and 43 are alike. They differ mostly as to the purpose for which the sale or transfer is made. To

render a conveyance void under section 42 it must appear, that it was made to prevent the property from going into the hands of the assignee, or to prevent the same from being distributed under the assignment laws, or to evade the provisions of such laws. It is apparent that the security in this case was not taken for any of the purposes specified in this section, but falls under and is governed by the provisions of section 43. In terms, that section controls cases where a transfer or conveyance of property is made with a view of giving a preference to a creditor. Under either section the creditor, at the time of making the sale or giving of the security, must be insolvent or in contemplation of insolvency, and the person receiving the conveyance or security must have reasonable cause to believe that the debtor is insolvent or is in contemplation thereof, in order to render such sale or security void. The prohibited acts must have taken place within thirty days before making of an assignment. If no general assignment follows, the transfer is valid, or if the transaction falls under any of the exceptions contained in the above quoted section, 44, it will be upheld. But, on the other hand, if it does not come within any exception recognized by this section and all the requisites of section 43 are found to exist, then the conveyance is conclusively presumed to have been made in fraud of the assignment law, and is void. There is no claim that the facts in the case we are considering, bring it within the provisions of section 44, as the mortgage and collateral notes were taken to secure a debt which was incurred more than nine months prior to the giving of the security, and the assignment was made within thirty days after the mortgage was executed. The mortgage and collaterals operate to give the defendants a preference over the other creditors of Mrs. Richardson. Such a preference would have been valid, however, had not the insolvent, within thirty days, made an assignment for the benefit of creditors.

. Section 1693a of the Revised Statutes of Wisconsin is almost identical with section 43 above quoted. The supreme court of that state has frequently had that section of the Wisconsin statute under consideration, and has invariably adopted the same construction that we now give to our statute. (*Anstedt v. Bentley*, 21 N. W. Rep., 807 ; *Batten v. Smith*, 22 Id., 342.)

In *Abbott, Assignee, v. Shepard*, 6 N. E. Rep., 826, the supreme court of Massachusetts had under consideration a case similar in its facts to the one at the bar. The statute of that state is like our assignment law. That action was brought by an assignee of an insolvent debtor, to recover certain notes transferred by the assignor to the defendant as an alleged preference. The court instructed the jury that the plaintiff must prove: " First, that, at the time of the payment or transfer in question, Abbott was insolvent, or in contemplation of insolvency; second, that the payment or transfer in question was made with a view to give a preference to the defendants over other creditors; third, that, at the time of the payment or transfer in question, the defendants had reasonable grounds to believe that Abbott was then insolvent, or in contemplation of insolvency ; and, fourth, that the transfer of the notes in question was made in fraud of the laws relating to insolvency; and that if the jury found the first, second, and third propositions, above stated, affirmatively established, that would authorize the finding 'that the transfer was in fraud of the insolvent laws.'" The court held that this instruction was correct.

Both upon principle and authority, the decree of the district court canceling the mortgage, and rendering judgment for the amount collected by the defendant on the collateral notes, was right and is therefore

AFFIRMED.

THE other judges concur.